# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DEBORAH J. MERRIMAN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-10-233-F |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Deborah J. Merriman ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by protectively filing her applications seeking disability insurance benefits and supplemental security income payments in June, 2007 [Tr. 98 - 100, 101 - 103, and 127]. She alleged that vision difficulties, constant pain, inability to stand or sit for long periods, stiffness, and inability to bend became disabling as of January

31, 2007 [Tr. 133].  Plaintiff's claims were denied and, at her request, an Administrative Law Judge ("ALJ") conducted a December, 2008 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 65 and 24 - 43].  In his February, 2009 decision, the ALJ found that while Plaintiff was unable to perform her past relevant work, she retained the capacity to perform other available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 12 - 21].  The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 4], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted).  Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion."  *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

On judicial review, Plaintiff contends the "[t]he ALJ committed reversible legal error by failing to properly evaluate the medical opinions of [Plaintiff's] treating physician, Dr. Stubbs." [Doc. No. 18, p. 12]. Plaintiff further maintains that "[t]he ALJ's residual

functional capacity[1] evaluation was legally flawed and not supported by substantial evidence." *Id.* at 19.

**Analysis**

### Dr. Stubbs' Treatment Notes

On January 31, 2007,[2] Plaintiff suffered an on-the-job injury to her lower back when she bent over to pick up a heavy box of wheels [Tr. 16]. She sought initial treatment at the Minor Emergency Clinic [Tr. 16 and 214 - 215] and began treatment with an orthopedic specialist, Scott Stubbs, M.D., on March 1, 2007, in conjunction with her workers' compensation claim [Tr. 16, 28 - 30, and 269 - 272]. Dr. Stubbs noted the following on physical examination:

> Physical examination reveals a 5 foot 10 inch, 290 pound female who is afebrile. She is alert and oriented x 3, well developed, well nourished, and pleasant overall. Overall alignment of her lumbar spine is fairly normal throughout. She is very tender over the paraspinous muscles radiating up and down the back. Gross neurologic exam is intact to sensory, motor, and reflex function. There are no upper neuron signs.

[Tr. 269]. Dr. Stubbs further noted that "[r]adiographs taken of the lumber spine from an outside facility appear normal." *Id.*

Dr. Stubbs diagnosed lumbar strain, *id.,* and prescribed conservative treatment with anti-inflammatory medication and physical therapy [Tr. 16 and 270]. Pending Plaintiff's

---

[1]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2]This is Plaintiff's claimed onset of disability date [Tr. 98 - 100, 101 - 103, and 127].

return for further evaluation in two weeks, Dr. Stubbs authorized a return to work with a five pound lifting/carrying restriction and restrictions from kneeling, squatting, stooping, and bending [Tr. 272]. Dr. Stubbs also restricted Plaintiff to "predominately sit down work" with a five to ten minute break from a seated position each hour. *Id.*

Plaintiff returned in two weeks reporting no improvement [Tr. 16 and 265 - 268]. Dr. Stubbs found that she still had some tenderness[3] and reassured her that her back strain "just warrants continued conservative treatment." [Tr. 265]. The doctor's stated plan was to see Plaintiff again in two weeks when he expected that she could be released back to her normal activities. *Id.* In the meantime, Dr. Stubbs released Plaintiff for work duty with essentially the same restrictions as before – "light duty/sit down work" – but without the hourly need for breaks from the seated position [Tr. 268].

Two weeks later, Plaintiff reported that "[s]he is really not tolerating trying to get back to any work at all and states that after about three to four hours of work she is at a point to where it is so severe she cannot continue and has to go home." [Tr. 16 and 259]." She

---

[3]Dr. Stubbs reported as follows:

On exam today, [Plaintiff] still has some tenderness along the lumbar and thoracic spine region. She has tenderness mostly in the paraspinous muscles. Her neurologic examination remains intact throughout. There are no upper motor neuron signs. She has no tension signs with a negative straight leg raise bilaterally.

[Tr. 265].

5

further stated that "now she is getting some occasional pain down the left thigh region." [Tr. 259]. Following physical examination,[4] Dr. Stubbs reported as follows:

> [Plaintiff] is a couple of months out now from her lumbar strain. I have told her that I see really no other need for further workup with MRI, etc., given that she just has continued back pain but no severe trauma and no neurologic symptoms. She is significantly overweight, and I am sure that contributes somewhat to her chronic pain. I have told her that this will just require continued activity modification and work on her part from a physical therapy standpoint and being patient. She reports pain at a level that really inhibits her from working. Because of this, I have recommended we obtain a functional capacity examination (FCE) to evaluate her level of work that we could place her back at safely. We may have to just place her back at a light level depending on the results of this and consider her to have some permanent restrictions if she is unable to do anything more aggressive. . . .

[Tr. 259 - 260]. Dr. Stubbs once again authorized Plaintiff's return to work with the same fundamental restrictions. [Tr. 261]. He specifically restricted her to light duty, "predominantly sit down work." *Id.*

Dr. Stubbs' report to the insurance adjuster of Plaintiff's final office evaluation is the focus of Plaintiff's appellate claim and, consequently, is reproduced in its entirety:

> [Plaintiff] is back today for followup of her low back pain. She underwent her functional capacity evaluation. This was done by Functional Solutions

---

[4]The specific results of the physical examination were as follows:

On examination today, [Plaintiff's] lumbar spine is still tender to palpation. She really has no evidence of any neurologic changes with good reflexes in the patellar tendons and Achilles bilaterally. Her sensation is intact bilaterally. There is no evidence of any motor dysfunction. Her straight leg raise is negative and just reproduces back pain but no leg pain. She has no upper neuron signs.

[Tr. 259].

6

Network on April 11, 2007. Upon reviewing the results of this, [Plaintiff] was able to perform at only a very light level of lifting. She was able to lift up to about 15 pounds from the waist level. Beyond this, she really was not capable of anything over the 15 - 25 pound level. She also was able to do intermittent occasional standing and walking. She was able to reach on a frequent basis without any difficulty. Bending and stooping involving the lumbar region were obviously limited as well. Overall conclusion from the functional capacity evaluation was that Debra really had a poor tolerance for any lifting and sustained standing, walking, or bending positions. She had pain with these. She was certainly unable to perform the essential job functions that she has been doing at her work with Atwoods.

I was also furnished with a surveillance video of the patient with activities over a couple of days at the end of March dated on the video. This was approximately a 12 minute video and shows the patient standing and walking for reasonably long amounts of time doing things such as going to and from grocery stores and what appear to be garage sales or other outdoor locations. She is able to lift, carry, and transport grocery bags for reasonable distances. She also was able to repetitively get in and out of a fairly small truck exhibiting some times where she would bend over and load groceries in and out of the back of the truck. There was certainly nothing that was a strenuous level of work exhibited on this, but she seemed to have no problems with these daily activities.

Today, I have discussed the results of the test with [Plaintiff]. I have recommended we release her and consider her at maximum medical improvement and have permanent restrictions of only the light level of work that was able to be obtained on her test. I will plan to just see her back on an as-needed basis. I have recommended that she continue her pain control measures with anti-inflammatories, activity modification, and weight loss measures.

Using the American Medical Association Guides to Evaluation of Permanent Impairment, Fifth Edition, I have formulated a partial permanent impairment rating of zero percent based on this in my opinion being a soft tissue injury which should result in no permanent impairment. . . .

[Tr. 256 - 257].

The ALJ summarized Dr. Stubbs' final report in the following manner:

7

> Dr. Stubbs referred the claimant for a functional capacity examination which was performed on April 11, 2007, and confirmed she was able to lift up to about fifteen pounds from the waist level (Exhibit 5F). Upon review, Dr. Stubbs concluded on April 17, 2007, that the claimant had a poor tolerance for sustained standing, walking, or bending. He also reviewed a surveillance video of the claimant's activities obtained over a couple of days at the end of March, and showed the claimant standing and walking for reasonably long amounts of time, doing things such as going to and from grocery stores and garage sales. He observed the claimant was able to lift, carry, and transport grocery bags for reasonable distances, was able to repetitively get in and out of a fairly small truck, and was able to bend over and load groceries in and out of the back of the truck. As such, he noted the claimant seemed to have no problems with these daily activities. Dr. Stubbs released the claimant from his care as having reached maximum medical improvement, effective April 17, 2007, with permanent restrictions of the light level of work. In his medical opinion, Dr. Stubbs found the claimant's soft tissue strain injury resulted in no permanent impairment and specified she had zero permanent partial disability (Exhibit 6F).

[Tr. 16]. On judicial review, Plaintiff "submits that the ALJ committed reversible legal error by failing to discuss and provide reasons for rejecting Dr. Stubbs' April 2007 opinion adopting as a permanent restriction the FCE finding that she could only sit on an occasional basis, and particularly where that opinion contradicted the ALJ's conclusion the [Plaintiff] could perform sedentary work and was reasonably supported by evidence both that the ALJ did and did not discuss." [Doc. No. 18, p. 18].

Plaintiff grounds her first claim of error, *id.* at 15 - 18, on the following statement made by Dr. Stubbs in his final evaluation letter, a letter written after the doctor reviewed the results of Plaintiff's functional capacity testing: "I have recommended we release her and consider her at maximum medical improvement and have permanent restrictions of only the light level of work that was able to be obtained on the test." [Tr. 256]. Plaintiff maintains

8

that the functional capacity evaluation ("FCE") revealed that Plaintiff could only sit occasionally and that the quoted statement by Dr. Stubbs constitutes his "opinion adopting the FCE limitation of occasional sitting." [Doc. No. 18, p. 15]. The ALJ erred, according to Plaintiff, when he "did not explain his reasons for rejecting this opinion when deeming [Plaintiff] capable of sedentary work (which requires sitting up to six out of eight hours a day)." *Id.*

The Commissioner, on the other hand, argues that "Plaintiff's contention is based entirely on her inaccurate assertion that Dr. Stubbs adopted a limitation to occasional sitting that was included in a functional capacity evaluation (FCE) completed by an occupational therapist in conjunction with Plaintiff's workers' compensation claim[.]" [Doc. No. 20, pp. 4 - 5]. The undersigned agrees. Dr. Stubbs' final evaluation letter makes absolutely *no* reference to Plaintiff's capacity to sit [Tr. 256]. Rather, his letter mentions Plaintiff's ability to do "only a very light level of lifting," *id.*, "intermittent occasional standing and walking," *id.*, frequent reaching, and limited bending and stooping. *Id.* There is no indication that Dr. Stubbs had *any* question about Plaintiff's ability to perform seated work;[5] his stated focus was on the Functional Limitations portion of the Return to Work Functional Capacity Evaluation Summary Results,[6] – "[p]oor tolerance for lifting and sustained standing, walking

---

[5]Sitting was not a job demand "of a receiving processor at Atwood's" [Tr. 252].

[6]The FCE report states that "[Plaintiff] was evaluated for the purpose of determining if she is able to meet the essential job demands of Receiving Clerk." [Tr. 250]. Correspondingly, Dr. Stubbs concluded after his review of the evaluation that Plaintiff "was

(continued...)

9

and bending. Pre-FCE pain level was 7/10, post-FCE pain level was 8/10" [Tr. 250] – and the conclusion that Plaintiff was "[u]nable to perform essential job demands." *Id.* Dr. Stubbs' report, read in its entirety, does not adopt the FCE limitation to occasional sitting and, accordingly, there was no sitting restriction imposed by Dr. Stubbs that the ALJ was required to consider and, thus, no such opinion was improperly rejected.[7] Plaintiff has failed to establish that the ALJ committed legal error in this regard.[8]

**RFC Assessment**

Here, Plaintiff "submits that the ALJ's failure to limit her sitting to no more than an occasional basis was both legally[9] and factually flawed." [Doc. No. 18, p. 20]. With respect to any factual flaw in the ALJ's RFC assessment, Plaintiff correctly argues that "a court may set aside a determination which is not supported by substantial evidence" and that "a factual finding is not supported by substantial evidence if it is either overwhelmed by other evidence or if it represents a mere conclusion." *Id.* at 19. A review of the record as a whole establishes that the ALJ's assessment of Plaintiff's capacity to perform a wide range of

---

[6](...continued)
certainly unable to perform the essential job functions that she has been doing at her work at Atwoods." [Tr. 256].

[7]It is worth noting that Dr. Stubbs' treatment notes are consistent with this conclusion. Following each of Plaintiff's physical examinations, Dr. Stubbs released her to perform light duty – what he characterized as "sit down work." [Tr. 261, 268, and 272].

[8]Plaintiff's argument that the evidence as a whole supports a restriction to occasional sitting is addressed in connection with Plaintiff's second claim of error.

[9]This was the subject of Plaintiff's first claim of error; this court's analysis of the claim stands and will not be repeated.

sedentary work is well-supported by the requisite substantial evidence: the previously referenced evidence of Dr. Stubbs' treatment [Tr. 16 and 256 - 272]; objective evidence of improvement with physical therapy[10] [Tr. 17 and 249]; evidence gathered – slight tenderness at the left lumbrosacral area, no complaints of radiation of pain, full and normal deep tendon reflexes, negative straight leg raising, excellent flexibility – when Plaintiff sought a second opinion regarding her lumbar strain [Tr. 17 and 274]; and, the residual functional capacity assessment prepared by a State agency medical consultant finding, in part, that Plaintiff could sit for a total of about six hours in an eight-hour workday [Tr. 18, 280, and 288 - 299].

In support of her argument that an occasional sitting limitation is consistent with the evidence as a whole, Plaintiff points to specific evidence, some referenced and some not, by the ALJ [Doc. No. 18, pp. 20 -21]. Nonetheless, she fails to explain how this evidence – back muscle tenderness, Achilles tendon swelling, swelling in her calf and legs, needing help getting in and out of the bathtub, and, immediately after her on-the-job injury, positive straight leg raise testing and lower back and trapezius tenderness – overwhelms the evidence relied upon by the ALJ in support of his RFC assessment for sedentary work. To the same effect is Plaintiff's *speculation* that an occasional sitting limitation is "also consistent with later evidence from Dr. Cheng indicating a diagnosis of fibromyalgia which very well could

---

[10]The ALJ found that Plaintiff's physical therapy results were an example of one instance where "[t]he objective medical evidence is not consistent with the excessive pain as alleged by claimant." [Tr. 17]. The ALJ ultimately concluded that "[w]hile the claimant complains of severe pain, it does not seem reasonable to conclude from the minimal findings in evidence that such could be the basis for the degree of pain alleged." [Tr. 18]. Plaintiff has not challenged the ALJ's credibility assessment on judicial review.

11

have existed prior to the ALJ's decision . . . given [Plaintiff's] consistent tenderness." [Doc. No. 18, p. 21].[11]

Finally, Plaintiff maintains that although the ALJ found Plaintiff's obesity[12] "to fall within the highest of three recognized levels (extreme), and found that obesity can exacerbate other impairments and cause additional pain and limitations, he simply stated that he considered the effects of [Plaintiff's] obesity but offered no actual explanation as to how he did so." *Id.* Plaintiff maintains this constitutes error according to the reasoning of Social Security Ruling ("SSR") 02-1p, 2000 WL 628049, and a recent Tenth Circuit decision in the case of *DeWitt v. Astrue,* 381 Fed. Appx. 782 (10th Cir. Jun. 2, 2010).

---

[11]With regard to the October and November, 2009, treatment records referenced by Plaintiff [Tr. 307 - 310], this evidence was presented by Plaintiff to the Appeals Council, not the ALJ [Tr. 4]. In fact, the records in question were not even generated until well after the ALJ issued his decision in February, 2009 [Tr. 12 - 21]. In declining Plaintiff's request for review, the Appeals Council specifically referenced the new evidence submitted by Plaintiff and stated that the evidence had been considered [Tr. 1 - 4]. "Because the Appeals Council considered [the] treatment records, the records are a part of the administrative record to be considered by this court when evaluating the ALJ's decision for substantial evidence." *Martinez v. Barnhart,* 444 F.3d 1201, 1208 (10th Cir. 2006) (citations, quotations, and brackets omitted).

Upon consideration of those records, the undersigned finds that these "records do not undercut the ALJ's finding" that Plaintiff could perform a wide range of sedentary work. *Martinez,* 444 F.3d at 1208. The records reflect that Plaintiff "displayed trapezoidal shoulder trigger points and bilateral knee pain; she also has limited movement secondary to her gross morbid obesity." [Tr. 307]. There is no reason to conclude based on a review of this evidence that the ALJ would "have altered [his] finding" that Plaintiff would not be limited in her ability to sit. *Martinez,* 444 F.3d at 1208.

[12]The ALJ found that Plaintiff's was severely impaired by her obesity [Tr. 14].

12

In *DeWitt,* the ALJ gave substantial weight to the testimony of a physician who believed the claimant could perform a wide range of sedentary work and who the ALJ mistakenly believed had given an opinion about the functional effects of the claimant's obesity. *Id.* at 3. Moreover, the physician's opinion was at odds with the opinion of one of the claimant's treating physicians who found that Plaintiff was unable to perform sedentary work. *Id.* The Tenth Circuit reversed the denial of benefits, determining that "the ALJ's decision fails to indicate adequate consideration of [claimant's] obesity in relation to her other impairments and her RFC[.]" *Id.* at 4.

In the present case and contrary to the situation in *DeWitt,* the ALJ's RFC limitation to sedentary work was informed by the opinion of Plaintiff's treating physician, Dr. Stubbs, that Plaintiff "had a poor tolerance for any lifting and sustained standing, walking, or bending positions." [Tr. 16 and 256]. Dr. Stubbs – who specifically acknowledged both Plaintiff's obesity and the fact that it contributes to her chronic pain[13] [Tr. 16[14] and 256] – never restricted Plaintiff from performing sedentary work and found that she had no permanent impairment.[15] When Plaintiff sought a second opinion regarding the functional effect of her

---

[13]Plaintiff argues "that the fact her obesity was medically determined to contribute to her chronic pain would logically affect her ability to engage in prolonged sitting." [Doc. No. 21, p. 7]. Plaintiff's opinion is just that, an opinion, or, put another way, speculation.

[14]The ALJ's decision notes that "Dr. Stubbs explained that the claimant's obesity contributes to her chronic pain[.]" [Tr. 16].

[15]Dr. Stubbs based his opinions, in part, on the results of a functional assessment he ordered in conjunction with his treatment and evaluation of Plaintiff. This is the same functional assessment that references sitting restrictions and is the *only* evidence of record
(continued...)

13

back injury, that physician likewise noted her morbid obesity and, on physical examination, found only a slight tenderness at Plaintiff's left lumbrosacral area, concurred with Dr. Stubbs' impression of a soft tissue injury, and declined to give Plaintiff the opinion she sought [Tr. 17 and 274]. There was no conflict between the physician's findings on examination with regard to Plaintiff's back strain;[16] both physician's functional findings acknowledged Plaintiff's obesity and provided no indication that such obesity resulted in additional work-related limitations beyond those already assessed by the ALJ when he limited Plaintiff from all but sedentary work. The ALJ's decision reflects his consideration of Plaintiff's obesity in relation to her back impairment, and no error was committed by the ALJ in this regard.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by March 14, 2011, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

---

[15](...continued)
of any such restriction. Dr. Stubbs, however, gave no credence to any such restriction, a restriction which plainly lacks the support of the overwhelming evidence of record.

[16]Apart from right eye blindness – an impairment which is not an issue on appeal – the ALJ found only two severe impairments, back strain and obesity [Tr. 14].

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 22nd day of February, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE